UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN McKINNEY,  ) | |
|      ) | |
|      Plaintiff,  ) | |
|      ) | |
|          v.  ) | Civil Action No. |
|      ) | 05-10224-RGS |
| UNITED STATES PAROLE COMMISSION,  ) | |
| et. al.,  ) | |
|      ) | |
|      Defendant.  ) | |
|      ) | |

**THE DEFENDANT'S OPPOSITION TO
PETITIONER'S WRIT OF HABEAS CORPUS**

**INTRODUCTION**

The United States Parole Commission (the "Commission"),
Chairman Edward F. Reilly, Jr., Cranston J. Mitchell, John
Simpson, Odie Washington and Willie Scott (hereinafter
collectively the "defendants") herein file their Opposition to
Petitioner's Writ of Habeas Corpus.  As grounds for their
Opposition the defendants state that based on the concurrent
opinion of two reviewers, which formed a panel recommendation,
the Commission adopted the finding that Steven McKinney
("Petitioner") was attempting to unlawfully enter the residence
with intent to steal.  Furthermore, the Commission found that it
was more likely than not that police intervention was the only
reason the burglary did not proceed.  Based on these findings by
the Commission, the petition for habeas corpus should be denied.

**STATEMENT OF FACTS**

Petitioner was sentenced by the District of Columbia

Superior Court on January 1, 1990 to a 15 year term of imprisonment for armed robbery (Exhibit 1, sentence monitoring computation data).  He was paroled from this sentence on May 1, 1987 by the District of Columbia Board of Parole (the "Board"), to remain under parole supervision until August 12, 1997 (Exhibit 2, letter).

The Board revoked parole "for criminal and noncriminal violations" by notice of board order dated June 5, 1997, and ordered consideration for re-parole in two years (Exhibit 3, notice of board order).  Petitioner was subsequently transferred to the jurisdiction of the Commission pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Public Law No. 105-33, §11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code §24-131 (formerly 24-1231).

The Commission considered petitioner for reparole in June, 2000, and ordered re-parole on March 9, 2001, after service of 166 months (Exhibit 4, notice of action).  The Commission noted that it had rated petitioner's parole violation behavior as Category Six severity because it involved three residential burglaries, burglary of a business, theft and illegal possession of a weapon (Exhibit 4).  Petitioner was reparoled March 9, 2001, to remain under parole supervision until April 25, 2007 (Exhibit 5, certificate of parole).

Shortly after his reparole, by letter dated July 12, 2001,
the Commission learned that petitioner had been arrested by
Montgomery County, Maryland police and charged with
Burglary I; possession of burglar's tools, to wit: brick; and
malicious destruction of property (Exhibit 3, letter and
attachments).  According to the police report appended to that
letter:

> "On 7/08/2001, the writer along with Cpl T. Lee
> responded to 9405 Woodland Drive, Silver Spring, MD in
> reference to an unknown subject to the rear of that address.
> The description given by the witness/neighbor was a male
> subject of unknown race, tall and slim with a shaved or bald
> head wearing a grey stocking cap and tan pant and a grey
> goatee.
>
> Upon arrival, the writer and Cpl Lee started to the
> rear of the residence when a loud repetitive banging noise
> was heard coming from the rear of the residence.  Upon
> approach of the rear stairwell, the writer and Cpl Lee
> observed a white male, later identified as McKinney, Steve,
> standing in the stairwell breaking out a window with a red
> brick.  The brick was wrapped in a white handerchief.  The
> window was a single pane of glass on the basement door.  The
> majority of the glass had been broken out and was laying at
> McKinney's feet.  The repetitive banging that was heard was
> McKinney striking the window and frame with the brick in an
> attempt to clear away more glass.  McKinney was ordered to
> drop the brick and to put his hands in the air.  McKinney
> complied and was taken into custody.
>
> McKinney had two cuts, one on each wrist, which he
> stated he got when he "leaned against the window I was
> breaking".
>
> Further investigation revealed that McKinney had
> reached through the broken window and released the sliding
> lock which was mounted on the interior of the door but was
> unable to open the door because the double cylinder dead
> bolt was engaged.  The home owner ... stated that McKinney
> had no permission to enter his home ...
> (Exhibit 6, attachment (police report)).

In response to this information, the Commission issued a warrant on July 31, 2001 charging petitioner with violating the conditions of parole by committing the law violations of Burglary I, [possession of] Burglary Tools, and Malicious Destruction of Property (Exhibit 7, warrant application and Exhibit 8, warrant).

Petitioner was ultimately permitted to plead guilty to the lesser included offense of Burglary, Fourth Degree (Exhibit 9, defendant trial summary). The Burglary Tools and Malicious Destruction of Property charges were "STETed". (*Id.*) Under Maryland law, this is not dismissal of the charges, nor "nolle prosequi"; it is an indefinite postponement of trial on the charge. The applicable Maryland Rule (Md.Rule 782(c)), provides in pertinent part:

> c. *Disposition by Stet.*
>
> Upon motion of the State's Attorney, the court may indefinitely postpone trial upon a charging document by marking the case 'stet' on the docket. The defendant need not be present when a case is stetted in which event the clerk shall send notice of the stet to the defendant, if his whereabouts are known, and to his counsel of record. *The case may not be stetted over the objection of the defendant.* A stetted case may be rescheduled for trial at the request of either party within one year and thereafter only by order of court for good cause shown (Emphasis supplied).

*cited in* State v. Weaver, 52 Md.App. 728, 451 A.2d 1259 (Md. App. Ct. 1982).

By letter dated October 18, 2001, the Commission informed petitioner that it had found probable cause to believe that he had violated the conditions of parole as charged (Exhibit 10,

probable cause letter).

The Commission conducted a revocation hearing for petitioner on December 13, 2001 (Exhibit 11, hearing summary). The hearing examiner supplemented the warrant at the hearing with the additional charge of "Breaking and Entering (4th Degree)",[1] the charge of which petitioner had been convicted (Exhibit 11, p. 1-2). She found petitioner to have violated the conditions of parole, based on his conviction of Burglary 4th Degree/Breaking and Entering. She relied upon a letter from petitioner's public defender describing his Maryland conviction (Exhibit 12, letter). The hearing examiner recommended that his parole be revoked, and that the case be remanded for a local revocation hearing to consider whether petitioner had committed "Attempted Burglary of a Residence."[2] The Commission adopted these recommendations, and

_____

[1] While petitioner's conviction was for Burglary 4th Degree under Maryland Code Art. 27 §32 (since recodified as Maryland Code, Crim. Law, §6-32), the only elements of that offense are breaking and entering the dwelling of another. Accordingly, the examiner's characterization of his conviction as having been for "breaking and entering" was not a material variation from the offense of conviction.

[2] While the examiner, and later the Commission, characterized this charge as "Attempted Burglary of a Residence", this was not a material variation from the original warrant charge of "Burglary I". The examiner apparently so characterized the charge because petitioner had not succeeded in getting the door open to enter the residence. However, petitioner's conviction of Burglary 4th Degree established as a matter of law that he had both broken and entered the residence (albeit, a technical entry consisting of his hand having broken the "line of threshold" of the house, see Hebron v. State, 608 A.2d 1291 (Md.App. 1992)(entry for purposes of burglary statute is

petitioner was so notified by notice of action dated January 7, 2002 (Exhibit 13, notice of action).

The Commission conducted a local revocation hearing on May 1, 2002, at which the arresting officer Kevin Sullivan appeared as a witness (Exhibit 14, hearing summary).[3] Officer Sullivan testified that when he arrived at the scene, he observed petitioner using a brick to bang against the window panel of the basement door. He stated that one of the windowpanes, the one closest to the door lock, was broken out (Exhibit 14, pp. 1-2). In the police report, he had written that when he arrived "the majority of the glass [in one pane] had been broken out" and that petitioner was "striking the window and frame in an attempt to clear away more glass" (Exhibit 6). He testified that there was human excrement present at the site when he arrived.

Petitioner then provided his version of the incident, which was that he had entered the stairwell in order to defecate, that

---

accomplished if any portion of the defendant's body crosses the "line of threshold" of the house)). Accordingly, because "entry" was already established as a matter of law, what remained to be determined by the Commission was whether or not petitioner had had the intent to commit a theft, which would make the breaking and entering a Burglary I, in addition to the lesser-included offense of Burglary 4th Degree.

[3] Note that the Commission makes tape recordings of its hearings, and that said tapes are available to the prisoner upon request, but that the Commission does not transcribe its hearings. Rather, the hearing examiner prepares a hearing summary memorializing the hearing. The transcript of his hearing submitted by petitioner as his Exhibit C is not an official transcription.

he had slipped in his own waste, cut his hand on the window, and then became enraged and begun beating on the windows in the basement door with a nearby brick[4] (Exhibit 14, p. 1).  He further testified that on an earlier occasion he had become frustrated with a non-functioning public telephone, and had "tried to kill the telephone by using a brick to hit it" (Exhibit 14, p. 2).

After hearing this testimony, the hearing examiner did not recommend a finding on the charge of burglary with intent to commit another crime, because he did not find such intent.  The reviewing examiner, however, found by the preponderance of the evidence that petitioner was attempting to unlawfully enter the residence with intent to steal.  He did not find petitioner's story credible, both on its face and because of petitioner's prior history of committing burglary/house-breaking.  He found it more likely than not that police intervention was the only reason the burglary did not proceed (Exhibit 15, parole form H-17).  The second reviewer also found that petitioner's version of events was not credible, finding that "it is more likely that one would use a brick for the purpose of unlawfully entering a residence rather than use it to express frustration at slipping on his own waste" (Exhibit 16).  The concurrence of the two reviewers formed

---

[4] Petitioner reiterates this version before this court, arguing that he "had no intention of entering the house" and "just wanted to 'kill the door.'" Petition, p. 5.

7

a panel recommendation, which the Commission adopted.  See 28

C.F.R. §2.103(g).  The Commission informed petitioner by notice

of action dated May 20, 2002 that it had found him to have

committed attempted burglary of a residence, an offense of

Category Five severity, and that he would be required to serve 60

months (to July 7, 2006) prior to reparole, on guidelines of 60-

72 months (Exhibit 17, notice of action).

### CLAIM PRESENTED

Petitioner claims that the Commission abused its discretion

in finding him to have committed the parole violation of

attempted burglary, because the record did not contain evidence

of his specific intent to commit a crime upon entering the

residence, an element of the crime of burglary.

### ARGUMENT

Petitioner's claim is without merit.  As a preliminary

matter, the Commission's authority to find that a parolee

violated the conditions of parole by committing a particular

crime, notwithstanding the dismissal of criminal charges for that

crime, or even acquittal, is well established.  *E.g.,* Standlee v.

Rhay, 557 F.2d 1303 (9th Cir. 1977)(Commission may find parolee

to have violated parole by committing new crime notwithstanding

acquittal of criminal charge for that crime); U.S. *ex rel.*

Carrasquillo v. Thomas, 527 F.Supp. 1105 (S.D.N.Y. 1981), aff'd,

677 F.2d 225 (2d Cir. 1982)(dismissal of criminal charges with

prejudice does not bar parole revocation based on the same charges); <u>Mullen v. U.S. Parole Commission</u>, 756 F.2d 74 (8th Cir. 1985)(dismissal of charges for "lack of prosecutorial merit" is no bar to Commission's independent finding of parole violation); <u>Whitehead v. U.S. Parole Commission</u>, 755 F.2d 1536 (11th cir. 1985)(acquittal does not preclude independent finding by Commission; Commission may rely on arrest reports as evidence to revoke parole). *Cf.* <u>U.S. v. Standefer</u>, 610 F.2d 1076, 1095 n.55 (3d Cir. 1979)(acquittal on criminal charges is not binding in a subsequent civil case inasmuch as burdens of proof differ)(*citing* <u>Standlee v. Rhay</u>).  Therefore, the fact that petitioner was permitted to plead to a lesser-included Maryland offense of burglary 4th degree (*i.e.*, breaking and entering without intent to commit another crime)[5] does not bind the Commission from finding him to have committed the more serious crime.  Petitioner characterizes this as the Commission "inexplicably" finding probable cause notwithstanding the state's "abandonment" of the charges (Petition for Habeas Corpus, p. 7).  It is in no way inexplicable, but rather very simple: the Commission is not bound by the decisions of state prosecutors, made for their own

---

[5] Under Maryland law, a person who breaks and enters the dwelling of another may be convicted of burglary in the fourth degree under Md. Code Criminal Law §6-205(a) (formerly Art. 27, §32).  A conviction of burglary in the fourth degree does not require a showing of specific intent. Herd v. State, 125 Md.App. 77; 724 A.2d 693 (Md.App. 1999).

9

reasons, in determining whether or not a parolee within its jurisdiction has violated the conditions of parole by committing new criminal conduct.

Furthermore, petitioner's conviction of burglary in the fourth degree establishes as a matter of law that he broke **and** entered the house.  *See* <u>Bane v. State</u>, 73 Md.App. 135, 533 A.2d 309 (Md.App. 1987)(state must show entry to support conviction). Accordingly, petitioner's version of events at his hearing, according to which he was merely vandalizing the door and did not have any intention to enter, and did not enter, is contradicted by his conviction for breaking and entering.  The police report indicated that there was a sliding lock on the interior of the door, in addition to the deadbolt, and that "further investigation revealed that McKinney had reached through the broken window and released the sliding lock which was mounted on the interior of the door but was unable to open the door because the double cylinder dead bolt was engaged" (Exhibit 6, police report, p. 2).  This reaching of his hand through the window to unlock the sliding lock would constitute the "entry" necessary for petitioner to be convicted of burglary in the fourth degree.[6] A purely accidental reaching of his hand through the window in

---

[6]  "Entry" for purposes of the burglary statute is accomplished when there is any passage of the body across the line of threshold of the residence.  <u>Hebron v. State</u>, 608 A.2d 1291 (Md.App. 1992).

the process of smashing it, without any intent to enter the
house, would not have sustained the state conviction for burglary
because there would not have been the requisite entry. *In re*
*Jason Allen D.*, 127 Md.App. 456, 484; 733 A.2d 351 (Md.App.
1999)(it is a complete defense to the charge of burglary in the
fourth degree that the defendant had a subjective belief that the
intrusion was warranted, and that said belief was objectively
reasonable); *Warfield v. State*, 554 A.2d 1238 (Md.App. 1989)(to
be guilty of criminal trespass, one must be "aware of the fact
that he is making an unwarranted intrusion"; burglary in fourth
degree is a "form of criminal trespass"). Accordingly, the
Commission need not credit petitioner's story that he had no
intention whatsoever to enter the house, but was merely beating
it up, because his Maryland conviction for burglary establishes
as a matter of law his intention to enter the house, and the fact
of his (partial) entry.  He could not have been convicted of
burglary in the fourth degree based solely on an accidental and
technical breach of the threshold while breaking a window solely
for the sake of breaking a window.  Petitioner's story was
inconsistent with his Maryland conviction, and the Commission was
entitled to credit the conviction and its necessary incidents
over petitioner's self-exculpatory story which negated an element
of his crime of conviction (intentional entry).  See generally,
*Morrissey*, supra at 490 ("Obviously a parolee cannot relitigate

11

issues determined against him in other forums, as in the
situation presented when the revocation is based on conviction of
another crime").

Petitioner's entry having been established as a matter of
law, the question then becomes: for what purpose was petitioner
trying to enter the house?  Venerable caselaw establishes that
the intention to commit a theft upon entering the house of
another person without authorization may be inferred, and need
not be proven by direct evidence.  As the court noted in United
States v. Morris, 1954 W.L. 2769, "If direct proof of [specific]
intent [to commit a crime after entry] were required, conviction
of burglary would be virtually impossible in every case where ...
the intended criminal act is not completed."  The requisite
specific intent for a burglary conviction is "usually based on
what reasonably is to be inferred from conduct" of the defendant.
Commonwealth v. Wygrzywalski, 291 N.E.2d 401, 402 (Ma. 1973).  An
intent to steal once inside a house may be inferred from a
forcible entry of the house.  *Id*.  The permissible inference of
intent to commit larceny from the breaking and entering of a
dwelling, in the absence of a satisfying alternative explanation
for the entry, is longstanding:

> Some presumptions are to be indulged in against one who
> enters a building unbidden, at a late hour of the night,[7]

---

[7] The mention of nighttime entry in this case does not
distinguish it from the instant case.  At the time of its

12

else the burglar caught without booty might escape the penalties of the law. 'The love of gain, the desire to get and have, is so wide a principle of human nature, that, other motives being eliminated, that remains as a sort of residuary solvent of conduct." * * * People are not accustomed, in the nighttime to enter the homes of others, when asleep, with innocent purposes.  The usual object is theft, and this is the inference ordinarily to be drawn, in the absence of explanation, from breaking and entering at night, accompanied by flight upon discovery, even though nothing has been taken.

United States v. Thomas, 444 F.2d 919, 924 (D.C. Cir.

1971)(quoting State v. Woodruff, 225 N.W. 254, 255 (1929)). *See*

*also* Ridley v. Commonwealth, 252 S.E. 2d 313 (Va. 1979)(court

inferred specific intent for burglary from defendant having

broken glass and entered, and absence of other satisfactory

explanation).

The Commission was presented with petitioner's version of

the offense, in which he did not acknowledge any intent to enter

the house, nor acknowledge that he had, in fact, entered the

house by sticking his arm through the window and unlatching the

door.  Because he did not offer **any** explanation for his entry but

instead denied it, his version of events cannot constitute a

"satisfactory explanation" for his entry into the house.  He has

---

decision, commonlaw burglary had nighttime entry as an element. This element has subsequently been eliminated.  See generally, U.S. v. Thomas, 444 F.2d 919, 921 n. 2 (D.C. Cir. 1971)(citing hornbooks). The rationale for the inference-that an unpermitted entry into the house of another person may be presumed to be for a nefarious purpose, and that larceny is the most usual such purpose-is not changed by the elimination of nighttime entry from the elements of burglary.

given the Commission nothing which weighs against the inference
that his entry was for the purpose of committing theft, and that
he would have proceeded with that purpose had police not arrived
and interrupted him.[8]

Judicial review of the Commission's findings of fact is by
the "rational basis" standard: the court may not disturb the
Commission's findings if there is a rational basis in the record
which supports those findings. Hanahan v. Luther, 693 F.2d 629
(7th Cir. 1982)(rational basis standard applicable to judicial
review of revocation decision); Kramer v. Jenkins, 803 F.2d 896,
901 (7th Cir. 1986)(rational basis review means court must uphold
decision if supported by "some evidence" in the record); Gambino
v. Morris, 134 F.3d 156 (3d Cir. 1998)(rational basis review);
Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001)(federal courts
are not authorized by the due process clause to second guess
parole boards, and the requirements of substantive due process
are met if there is some basis in the record for the challenged
decision); See also Superintendent v. Hill, 472 U.S. 445, 455-
56 (1985)("some evidence" review does not require examination of

---

[8] Petitioner argues that his continued banging on the door
after having smashed out one pane of glass supports his "blind
rage" version of events and shows that he did not intend to enter
the house. However, the Commission could reasonably view his
continued banging on the "window and frame" (Exhibit 6, police
report, p. 2) as his attempt to break the wooden frame between
the panes of glass to permit his entry, having discovered that
the lock was double cylindered and he would not be able to simply
unlock and walk through the door.

the entire record, assessment of witness' credibility, or
weighing of the evidence before the agency).

There is a rational basis for the Commission's finding that
petitioner committed a "classic" burglary (*i.e.*, with intent to
commit a theft), not merely a burglary fourth degree.
Specifically, petitioner's intention to commit theft can be
inferred from the fact of his having broke and entered, in the
absence of a reasonable alternative explanation for the breaking
and entering. *See* cases cited *supra*. The Commission was not
compelled to credit all of petitioner's bizarre story of how he
came to be breaking a window in a rear basement stairwell,
particularly because his conviction of burglary fourth degree
undermines his story, as argued above.[9] (The fact that petitioner
broke the window pane closest to the lock also undermines his
story, as the likelihood that a person lashing out in blind rage
would just happen to target the one of several panes which was
closest to the lock is small (See Exhibit 14, pp. 1-2, door had
several panes, one broken was closest to lock; Petitioner's

_____

[9] The fact that there were feces present in the stairwell
does not, as petitioner argues, compel the Commission to credit
his entire story. The burglary could have been a crime of
opportunity, with the opportunity occurring to petitioner after
he had used the stairwell to relieve himself, that he could then
proceed to break into the house. The Commission could reasonably
decline to credit petitioner's explanation of how he came to have
broken out the pane of glass closest to the lock, and entered the
house by sticking his arm through the door and opening the lock,
even if it believed that he had in fact defecated in the
stairwell.

Exhibit C, p. 16, officer's testimony that door had nine glass panes). In addition, the record contains evidence that petitioner stuck his hand through the broken window and unlatched an interior sliding lock (See Exhibit 6, police report p. 2). Petitioner's prior history of burglaries is probative of what his intent was with regard to the breaking and entry, and was so considered by the Commission (Exhibits 15 and 16); *Cf*. FRE 404(b)(evidence of other crimes not admissible to prove character, but admissible, *e.g.*, for proof of intent or motive).[10] The Commission was not required to credit, and did not, petitioner's assertion that he just happened to find a loose brick in the stairwell when he needed one to express his rage: the State charged him with possession of burglary tools (brick) "with the intent to use the same in the commission of a crime involving the breaking and entering of a motor vehicle". In short, the Commission could reasonably conclude that he had brought the brick with him, not found it at the site (This inference finds further support from petitioner's exculpatory

---

[10] While the Federal Rules of Evidence do not apply at parole revocation hearings, *see* <u>Morrissey v. Brewer,</u> 408 U.S. 471, 489 (1972)(parole revocation is not a criminal prosecution in any sense; "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial"), the fact that certain evidence could be introduced under the rules for a particular purpose, in a proceeding using a higher standard of proof, indicates that such usage in an administrative proceeding using the proponderance standard is appropriate.

claim that he had previously tried to "kill" a telephone with a brick when his call did not go through; it is simply implausible that each time petitioner goes into a sudden irrational rage, there just happens to be a loose brick lying directly at hand which he can use to vent it). Accordingly, there is a rational basis in the record in support of the Commission's finding that petitioner had the requisite intent for burglary, and the Commission's finding must not be disturbed by this court.

Petitioner's request that the court order his immediate release because the Commission allegedly erred in ordering him to serve 60 months for his parole violation must be rejected. It is the well-settled law of the District of Columbia, embodied in decisions of the highest court of that jurisdiction, the District of Columbia Court of Appeals, that parole decisions made pursuant to the District's parole statute[11] are not reviewable on

---

[11] The D.C. parole statute provides that:

Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board **may** authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

D.C. Code §24-404(a) (formerly §204(a))(emphasis added). The U.S. Parole Commission makes its decisions regarding D.C. Code offenders pursuant to the D.C. parole statute. D.C. Code §24-131(c)(Commission shall exercise authority over D.C. Code offenders granted by Revitalization Act pursuant to parole laws

the merits.  *E.g.*, <u>Stevens v. Quick</u>, 678 A.2d 28, 31 (D.C. App.
1996)(Court does not review the merits of decision by U.S. Parole
Commission, under District's parole regulations); <u>Bennett v.
Ridley</u>, 633 A.2d 824, 826 (D.C. App. 1993)("On a petition for a
writ of habeas corpus, this court does not review the merits of
the [D.C. Parole] Board's decision [to revoke parole], but only
whether the petitioner has been deprived of his legal rights by
the manner in which the revocation hearing was conducted, in
order to determine whether there has been an abuse of
discretion."); <u>Smith v. Quick</u>, 680 A.2d 396, 398 (D.C. App.
1996)("We do not review the merits of the Board's decision in
denying parole, and are limited to a review of the procedures
used by the Board in reaching its decision."); <u>Jones v. Braxton</u>,
647 A.2d 1116 (D.C. App. 1994)(merits of decision denying parole
not judicially reviewable); <u>Brown-Bey v. Hyman</u>, 649 A.2d 8 (D.C.
App. 1994)(length of set-off to rehearing is "merits" decision,
and is not judicially reviewable).  This is because the D.C.
parole statute clearly grants complete discretion to the D.C.
Board to release a prisoner "whenever it shall appear to the
Board" that the preconditions for release are satisfied.  In
addition, the statute uses discretionary language (the Board
"may" authorize release), and contains two criteria which are

---

of District of Columbia).

18

solely matters of judgment (whether there is a reasonable
probability that the prisoner will not violate the law, and
whether his release is "incompatible with the welfare of
society"). As the Supreme Court noted in Greenholtz v. Inmates
of the Nebraska Penal and Correctional Complex, 442 U.S. 1
(1979):

> The parole-release decision...is more subtle [than the
> revocation decision] and depends on an amalgam of elements,
> some of which are factual but many of which are purely
> subjective appraisals by the Board members based upon their
> experience with the difficult and sensitive task of
> evaluating the advisability of parole release. Unlike the
> revocation decision, there is no set of facts which, if
> shown, mandate a decision favorable to the individual.

442 U.S. at 10. In short, under the D.C. parole statute, there is
not set of facts which, if shown, mandate that the Board grant a
parole release. Ellis v. District of Columbia, 84 F.3d 1413,
1420 ( D.C. Cir. 1996).

It is also the case that federal courts defer to the
expertise of the highest court of a state on questions of
interpretation of state law. See Noble v. U.S. Parole
Commission, 82 F.3d 1102 (DC. Cir. 1996)(federal court certifies
"D.C. law" question to D.C. Court of Appeals); L. Cohen & Co. v.
Dunn & Bradstreet, 629 F.Supp. 1419 (D.Conn. 1986)(federal judge
should try to resolve a state law question from available
materials, including caselaw of the state). Given that the
District's highest court has repeatedly held that the D.C. parole
statute creates such discretion regarding the parole decision

19

that courts will not review the merits of a decision to grant ,
deny, or revoke parole, this court should similarly refrain from
reviewing the merits of the Commission's decision in petitioner's
case. *Cf.* <u>Stevens v. Quick</u>, 678 A.2d 28 (D.C. App.
1996)(reviewing decision of U.S. Parole Commission under D.C.
statute equivalently to decision by D.C. Board).  Because
petitioner's undisputed conviction for burglary fourth degree
established his violation of the conditions of parole and the
legality of revocation of his parole, his challenge to the
requirement that he serve 60 months is a challenge to the merits
of the reparole decision (*i.e.,* how much time the violator should
spend in custody).  As a challenge to the merits, it is
unreviewable.  Accordingly, the court may not order petitioner's
immediate release. *See generally*, <u>Billiteri v. U.S. Board of
Parole</u>, 541 F.2d 938, 944-45 (2d Cir. 1976)(court cannot grant
release on parole as habeas remedy).

     To the extent petitioner claims that the variance between
the characterization of the charges on the warrant application
and the notice of action entitles him to relief, his claim is
without merit.  Again, as noted above, parole revocation
proceedings are not a "criminal proceeding". <u>Morrissey</u>, *supra.*
Accordingly, a minor technical variation in the charges does not
per se create a violation of petitioner's rights.  Petitioner
would only be entitled to relief if he could establish that the

minor variance in the charges deprived him of notice of what he
would be called upon to defend at his revocation hearing. In
short, he must show prejudice resulting from the alleged error.
*E.g.*, <u>D'Amato v. U.S. Parole Commission</u>, 837 F.2d 72, 77 (2d Cir.
1988)(petitioner did not demonstrate prejudice resulting from not
receiving written notice of the charged violations); <u>White v.
U.S. Parole Commission</u>, 856 F.2d 59, 61 (8th Cir. 1988)(due
process requires written notice of conditions, but "In order for
the failure to provide written notice to form a basis for habeas
relief, a petitioner must demonstrate that he was prejudiced by
the claimed defect.").

However, petitioner concedes that he had actual notice
(Petition, p. 16, no. 13).  He merely argues that the variation
violated the Commission's Procedures Manual.  *Id*.  That does not
entitle him to relief, as it is well-established that the
Commission's Procedures Manual does not create any enforceable
rights in a litigant.  <u>See</u> <u>Sullivan v. United States</u>, 340 U.S.
170 (1954)(staff manuals do not create any enforceable rights);
<u>Schweiker v. Hansen</u>, 450 U.S. 785, 789 (1981)(per curiam);
<u>Caporale v. Gasele</u>, 940 F.2d 305, 306 (8th Cir. 1991) (District
court does not have jurisdiction to review allegations of
violations of the Commission's procedures manual); <u>Coleman v.
Perrill</u>, 845 F.2d 876 (9th Cir. 1988) (Parole Commission need not
follow provisions in its Procedures Manual and the decision

21

whether or not to follow those internal rules is within the discretion of the Parole Commission and unreviewable); <u>James v. U.S. Parole Commission</u>, 159 F.3d 1200, 1205 (9th Cir. 1998); <u>Lynch v. United States Parole Comm'n</u>, 768 F.2d 491, 497 (2d Cir. 1985) (Parole Commission's Procedures Manual does not create enforceable rights); <u>Ostrer v. Luther</u>, 668 F. Supp. 724, 735 (D. Conn. 1987) (same); <u>Benedict v. United States Parole Commission</u>, 569 F. Supp. 438, 445-46 (E.D. Mich. 1983) (same).  His claim of variance between the warrant application and the charges found therefore comes to naught.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus should be denied and the case dismissed.

<div style="margin-left:40%">

For the Defendant,

MICHAEL J. SULLIVAN,
United States Attorney


<u>/s/ Rayford A. Farquhar</u>
RAYFORD A. FARQUHAR
Assistant U.S. Attorney
1 Courthouse, Suite 9200
Boston, MA  02210
(617) 748-3100

</div>

## CERTIFICATE OF SERVICE

Suffolk, ss.                          Boston, Massachusetts
                                      November 17, 2005

I, Rayford A. Farquhar, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing upon last counsel of record, Catherine F. Easterly, Public Defender Service

for D.C., Special Litigation Division, 633 Indiana Avenue, N.W. Washington, D.C. 20004, and Steven McKinney, Register Number 06964-007, Rivers Correctional Institution, P.O. Box 630, Winston, NC 27986, by First Class Mail.

/s/ Rayford A. Farquhar
Rayford A. Farquhar
Assistant U.S. Attorney